# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:08CV414-DCS

| | |
|---|---|
| DONALD RAY THOMAS, )<br>      Plaintiff, )<br>)<br>      vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>      Defendant. )<br>) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #8) and "Memorandum in Support ... " (document #9) both filed January 20, 2009; and the Defendant's "Motion For Summary Judgment" (document #11) and "Memorandum in Support of the Commissioner's Decision" (document #12), both filed March 23, 2009. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Plaintiff's Motion for Summary Judgment; <u>grant</u> Defendant's Motion for Summary Judgment; and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On February 7, 2005, the Plaintiff filed an application for a period of disability and Social Security disability benefits ("DIB"), alleging he was unable to work as of April 23, 2004, due to pain

caused by spinal stenosis following a work-related accident (Tr. 39, 68, 99-100). The Plaintiff's claim was denied initially and upon reconsideration.

The Plaintiff filed a timely Request for Hearing, and on November 14, 2007, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated January 18, 2008, the ALJ denied the Plaintiff's claim, finding that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date; that the Plaintiff suffered from low back pain and right leg pain; that these were severe impairments within the meaning of the regulations, but that those impairments did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that the Plaintiff could not perform any of his past relevant work; and that the Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform light[2] work which required walking and/or standing for no more than two hours at a time, walking of no more than 200 yards, and no more than occasional stooping and crouching. Finally, the ALJ concluded that based on the testimony of a Vocational Expert ("VE"), who responded to a hypothetical question from the ALJ, the Plaintiff's RFC would allow him to perform other jobs existing in sufficient numbers in the national economy to support a finding that the Plaintiff was not disabled.

---

[1] The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

By notice dated August 12, 2008, the Appeals Council denied the Plaintiff's request for further administrative review.

The Plaintiff filed the present action on September 5, 2008. On appeal, the Plaintiff assigns error to the ALJ's omission of a specific reference to the Plaintiff's low back and right leg pain in the hypothetical question he presented to the Vocational Expert; and to his decision not to give controlling weight to the April 3, 2007 opinion of the Plaintiff's treating family physician, Dr. John Vick. Plaintiff's "Memorandum in Support ... " at 2 and 10 (document #9). The parties' cross-motions for summary judgment are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3]  Relevant to the first issue raised on appeal, the ALJ presented the following hypothetical to the VE:

> Assume we have a hypothetical person whose [age, education and work history is] the same as [the Plaintiff]. His residual functional capacity is light who can sit for one

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

> hour, stand for 30 minutes, who can walk 100 yards, who can lift 10 pounds, who is limited to occasional stooping and crouching, who is able to stand, move for up to 2 hours at a time. Would such a person be capable of performing ... [the jobs the VE had identified: storage facility rental clerk, coin machine collector, and attendant]?

(Tr. 266.)

In response to this hypothetical, the VE testified that the Plaintiff would be able to perform the listed jobs and that an aggregate of 6,890 of those jobs existed in North Carolina.

In the five-step sequential evaluation process used by the Administration, once a claimant establishes that he is unable to return to his past relevant work at step four, the burden of going forward shifts to the Commissioner, who must demonstrate at step five that there are other jobs in the national economy that the claimant can perform. Hall v. Harris, 658 F.2d 260, 264-265 (4th Cir. 1981). In reaching a decision, an ALJ will first turn to the Medical-Vocational Guidelines, which indicate what the disability determination should be based on various combinations of age, education, and past vocational experience in conjunction with the claimant's RFC. Id. at 265. In the event that the claimant suffers from solely nonexertional limitations (typically chronic pain) or has a combination of exertional and nonexertional restrictions, the ALJ is not to use the Medical-Vocational Guidelines exclusively and must make a full and individualized consideration of all the relevant vocational factors. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983). In other words, for the Commissioner to be able to prevail at step five of the sequential evaluation process, where the claimant has nonexertional limitations, the ALJ must demonstrate through vocational testimony that, despite the claimant's restrictions, there are other jobs in the national economy that he can perform. Id.

It is well settled that VE testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an

accurate RFC. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989); House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994) (an ALJ's hypothetical is "sufficient if it sets forth the impairments which are accepted as true by the ALJ"). Here, and notwithstanding the ALJ's choice not to use the words "low back pain" or "leg pain," it is clear that his hypothetical question accurately encapsulated his determination of the limitations that resulted from the Plaintiff's back and leg pain. In addition to imposing an exertional limitation of light work, the ALJ included nonexertional limitations that obviously were caused by his pain, that is, his ability to perform even light work was further limited to sitting no more than an hour at a time, standing for 30 minutes, walking 100 yards, avoiding more than occasional stooping and crouching, and no more than 2 hours of continuous movement. Therefore, the hypothetical question "sufficient[ly] ... set[] forth the impairments which [we]re accepted as true by the ALJ," House, 34 F.3d at 694, and was a proper predicate for the VE's testimony that there were, in fact, jobs in the national economy that the Plaintiff could perform. Accordingly, the Plaintiff's first assignment of error is overruled.

Concerning the Plaintiff's second assignment of error, in a "To Whom It May Concern" letter dated April 3, 2007, Dr. Vick, who practiced at Union Family Practice, stated:

> [The Plaintiff] has been a patient of mine for a number of years. Unfortunately, he has developed severe spinal stenosis with persistent right sciatica and chronic severe back pain. He has had multiple evaluations by orthopaedic surgeons and spinal specialist [sic]. There has been no available treatment to [ameliorate] his pain from a surgical standpoint. He has been managed with chronic pain medicine. [The Plaintiff] is uncomfortable all the time. He has difficulty getting up out of a chair and walking. He also is bothered with intractable reflux which has been a difficult management problem as well. The patient has been disabled since February of 2005. His problems are intractable. I do not think he is capable of gainful employment in any fashion. This is a permanent situation.

(Tr. 236.)

The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). As discussed in detail below, Dr. Vick's limited findings and the other medical records, including the opinions of three orthopedic surgeons and a "spine specialist," support the ALJ's essential conclusion that the Plaintiff suffered from, but was not disabled by his low back and leg pain. Therefore, the ALJ's decision to give Dr. Vick's opinion less than controlling weight is supported by substantial evidence.

Specifically, the record reveals that the Plaintiff suffered a work injury to his back on April 24, 2004 (Tr. 153). On May 13, 2004, Plaintiff saw Dr. David DuPuy, an orthopedic surgeon with OrthoCarolina, who noted that the Plaintiff had pain in his back with flexion and extension, as well as positive straight leg raising on the right (Tr. 217). However, Dr. DuPuy additionally noted that the Plaintiff had a non-antalgic (normal) gait, full range of motion in his hips, knees, and ankles, and 5/5 (normal) motor strength. Id.

An MRI taken of Plaintiff's lumbar spine on May 25, 2004 showed only mild central spinal stenosis secondary to a disc bulge at the L4-5 level and mild foraminal encroachment secondary to a disc protrusion at L3-4 (Tr. 216, 219).

7

On June 10, 2004, Dr. DuPuy released Plaintiff to light duty work (Tr. 215).

On August 20, 2004, Dr. Eric Laxer, also an orthopedic surgeon with OrthoCarolina, found that the Plaintiff sat, stood, and walked with good spinal alignment (Tr. 210). He noted that the Plaintiff had slightly increased pain with forward bending and pain upon straight leg raising on the right; that the Plaintiff had mild degenerative changes as well as minimal stenosis at L4-5 and a disc protrusion at L3-4; and that there was no strong indication for surgery (Tr. 210). Dr. Laxer concluded that, at that time, Plaintiff could work four hours per day with a 10 pound lifting limitation and a sit/stand option (Tr. 211).

From July through September of 2004, Plaintiff received several lumbar epidural steroid injections (Tr. 194-195, 198-199, 202-203, 207, 209, 213). On September 13, 2004, Dr. DuPuy diagnosed Plaintiff with a disc bulge at L3-4 and spinal stenosis at L4-5 with foraminal encroachment (Tr. 208). On September 27, 2004, Plaintiff told Dr. DuPuy that the injections had not helped much (Tr. 206). Dr. DuPuy assessed Plaintiff with a 5% partial, permanent impairment of his back (Tr. 206). He released Plaintiff to work, with instructions to gradually increase his hours worked per day so that, within two months, he would be working a full eight-hour day with a 25 pound lifting limitation (Tr. 206).

On November 10, 2004, Dr. Vick saw the Plaintiff (Tr. 156). Upon examination, the Plaintiff had positive straight leg raising on the right (Tr. 156). Dr. Vick opined that, at that time, Plaintiff should not lift more than 10 pounds, that he should perform repetitive lifting no more than 10-15 times per hour, that he should not perform overhead work or repetitive stooping or twisting, and that he should work no more than four hours per day (Tr. 156).

On December 9, 2004, the Plaintiff saw Dr. Frank Lorch with Total Spine Specialists. The

Plaintiff reported that he could sit and stand for one hour each with minimal pain and that he could walk 300 yards with only minimal pain (Tr. 227). Additionally, Dr. Lorch noted that the Plaintiff had a normal gait and had no significant tenderness upon palpation of his back, describing the Plaintiff's decreased range of motion in the lumbar spine as "self-restricted" (Tr. 227). However, the Plaintiff complained about discomfort in the L4-5 area upon extension and did display some weakness and decreased sensation in his right leg (Tr. 227). Accordingly, Dr. Lorch ordered an EMG study, which was conducted on January 5, 2005, and was entirely normal, showing no evidence of lumbosacral radiculopathy, myopathy, or neuropathy involving Plaintiff's right leg (Tr. 222, 226).

On January 27, 2005, the Plaintiff saw Dr. Lorch again (Tr. 222). Dr. Lorch agreed with Dr. DuPuy's assessment of 5% partial, permanent impairment of the back (Tr. 222). Dr. Lorch diagnosed Plaintiff with an L3-4 disc bulge and very mild L4-5 stenosis (Tr. 222). He released Plaintiff to work with no restrictions (Tr. 222-23).

On February 7, 2005, the Plaintiff returned to Dr. Vick. The Plaintiff displayed positive straight leg raising on the right (Tr. 154). Contrary to Dr. Lorch's conclusions, Dr. Vick opined that Plaintiff was definitely unable to function; that if the Plaintiff was on his feet for any length of time, he would have severe pain; and that it appeared as though Plaintiff was going to be totally disabled (Tr. 154).

On March 29, 2005, an Agency physician reviewed the Plaintiff's medical records and concluded that he could lift up to 50 pounds occasionally and up to 25 pounds frequently (Tr. 137), that is, the exertional requirements of medium work. The physician further concluded that the Plaintiff could sit, stand, and walk for up to six hours each in an eight-hour work day and that he could occasionally stoop and crouch (Tr. 137-138). A second Agency physician affirmed this RFC

determination on September 22, 2005 (Tr. 144).

A March 30, 2005 "Report of Contact" reflects that the Plaintiff told an Agency interviewer that he could be "up" more than two hours without needing pain medication and that he could walk up to 200 yards; that he could prepare simple meals, dust the house "a little," and drive for short distances; that he could dress and bathe without assistance; that no surgery had been recommended; and that his pain medications did help alleviate his discomfort (Tr. 90).

On October 19, 2005, Dr. Vick found that although the Plaintiff had positive straight leg raising on the right, he nevertheless had a full range of motion in his extremities and that his gross motor skills were within normal limits (Tr. 147).

In a "Disability Report" dated December 8, 2005, the Plaintiff stated that he could stand for up to two hours before needing medication, that he could sit for up to three hours, and that he could lift up to 10 pounds without discomfort (Tr. 100).

The Plaintiff continued to see Dr. Vick from 2005 through 2007, during which period of time Dr. Vick repeatedly diagnosed the Plaintiff as suffering chronic back pain and reflux. (Tr. 237-43). On April 3, 2007, Dr. Vick wrote the letter, quoted above, stating that Plaintiff had severe spinal stenosis and that he had been disabled since February 2005 (Tr. 236).

On May 4, 2007, Dr. Neal Goldberger, an orthopedic surgeon with Carolina Bone and Joint, examined the Plaintiff (Tr. 231). Although the Plaintiff had positive straight leg raising on the right, he had good flexion, extension, and side rotation of his lumbar spine, no tenderness in his back, and good and equal strength in his legs (Tr. 231). His sensation was intact and his reflexes were normal (Tr. 231). Dr. Goldberger diagnosed Plaintiff with disc bulges at L3-4, L4-5, and L5-S1 (Tr. 232) and spinal stenosis at L3-4 and L4-5 (Tr. 232), conditions which he characterized as "significant," but like

Doctors Dupuy, Laxer, and Lorch, Dr. Goldberger did not find that the Plaintiff was unable to work.

At the administrative hearing held November 14, 2007, the Plaintiff testified that he could not work due to pain in his lower back and numbness in his right leg (Tr. 252). He estimated that he could sit or stand for up to 30 minutes and that he could walk about 100 yards (Tr. 253). He stated he could cook a little, shower, walk around outside, do some laundry, and drive short distances (Tr. 259-60).

This record constitutes substantial evidence supporting the ALJ's decision that Dr. Vick's opinion was not entitled to controlling weight. Indeed, other than positive straight leg raise tests, Dr. Vick's opinion of the severity of the Plaintiff's ailments was based entirely on the Plaintiff's subjective complaints of pain. Moreover, on October 19, 2005, Dr. Vick found that although the Plaintiff had positive straight leg raising on the right, he nevertheless had full range of motion in his extremities and that his gross motor skills were within normal limits.

More significantly, Dr. Vick's opinion was contradicted by the testing, objective findings, and opinions of Doctors Dupuy, Laxer, Lorch, and Goldberger. The MRI ordered by Dr. Dupuy showed only "mild" degenerative changes and the EKG performed by Dr. Lorch was normal. These doctors also repeatedly found that the Plaintiff had normal sensation, range of motion and muscle strength. None of them opined that the Plaintiff could not work. Indeed, Dr. Dupuy and Dr. Laxer, both orthopedic surgeons, and Dr. Lorch, who is described in the record as a "spine specialist," agreed that the Plaintiff could perform, at least, light work. Additionally, Dr. Dupuy and Dr. Lorch found that the Plaintiff's condition caused no more than a 5% impairment to his back. Although Dr. Goldberger described the Plaintiff's limitations as "significant," he placed no restrictions on the Plaintiff's ability to work that were inconsistent with the ALJ's conclusion that the Plaintiff retained

the RFC to perform light work requiring walking and/or standing for no more than two hours at a time, walking of no more than 200 yards, and no more than occasional stooping and crouching (Tr. 13). Likewise, the Agency physicians who reviewed the Plaintiff's records also found the Plaintiff to be capable of performing work within the parameters found by the ALJ (Tr.137-38, 144). See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (the opinion of a non-examining physician can be relied upon when it is consistent with the record). None of the Plaintiff's treating physicians believed that he was a surgical candidate, and his pain appeared to respond to his medication (Tr. 90, 210). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Finally, the Plaintiff's own statements regarding his ability to sit, stand, and walk, as well as his activities of daily living, support the ALJ's determination. See Gross, 785 F.2d at 1166 (pattern of claimant's daily activity, which included cooking, washing dishes, and generally taking care of the house, suggested that he was not disabled from working); and Rogers v. Barnhart, 204 F.Supp. 2d 885, 894 (W.D.N.C. 2002) (evidence of plaintiff's daily activities supported ALJ's negative credibility finding despite plaintiff's claim that such activities were performed at a slower pace and with assistance from others).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57. Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by his combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's

designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and ultimate determination that the Plaintiff was not disabled.

## V. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. "Plaintiff's Motion For Summary Judgment" (document #8) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #11) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

Signed: April 9, 2009

_____
David S. Cayer
United States Magistrate Judge